### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

FRANK DEVILLE,

        *Plaintiff*,

    v.

PENSION BENEFIT GUARANTY
CORPORATION,

        *Defendant.*

No. 1:23-cv-1343 (DLF)

### MEMORANDUM OPINION

In this action, plaintiff Frank Deville, proceeding *pro se*, challenges the decision of the Pension Benefit Guaranty Corporation ("PBGC") Appeals Board that he is not entitled to disability benefits under the Exide Technologies Retirement Plan (the "Exide Plan"). Before the Court are Deville's Motion for Summary Judgment, Dkt. 57, PBGC's Cross-Motion for Summary Judgment, Dkt. 73, and certain other motions filed by Deville, Dkts. 84, 85.  For the reasons that follow, the Court will deny Deville's Motion for Summary Judgment, grant PBGC's Motion for Summary Judgment, and deny Deville's remaining motions.

## I.    BACKGROUND

### A.  Statutory and Regulatory Background

PBGC is a wholly owned United States government corporation established within the Department of Labor. 29 U.S.C. § 1302(a); *PBGC v. LTV Corp.*, 496 U.S. 633, 636–37 (1990). It "administers and enforces Title IV" of the Employee Retirement Income Security Act of 1974, ERISA for short.  *LTV Corp.*, 496 U.S. at 637.

Under Title IV, PBGC manages and insures certain private pension plans.  *See Fisher v. PBGC*, 994 F.3d 664, 667 (D.C. Cir. 2021); *PBGC v. R.A. Gray & Co.*, 467 U.S. 717, 720 (1984). In particular, when a private plan is terminated or lacks sufficient funds to pay guaranteed benefits to plan participants, PBGC pays certain benefits on behalf of the plan and becomes the statutory trustee of that plan under Title IV.  *Lewis v. PBGC*, 40 F. Supp. 3d 147, 150 (D.D.C. 2014).  As trustee, PBGC "makes determinations about plan participants' benefits in accordance with" the plan's terms, Title IV, and PBGC's own regulations.  *Id.* (citing 29 U.S.C. § 1342(d)(1)(B)); *see Davis v. PBGC*, 734 F.3d 1161, 1165 (D.C. Cir. 2013).

A person aggrieved by an initial PBGC determination may file an appeal to the PBGC Appeals Board.  29 C.F.R. §§ 4003.51, 4003.53.  The Appeals Board decision "constitutes the final agency action by the PBGC with respect to the determination which was the subject of the appeal," *id.* § 4003.59(b), and is "subject to judicial review under the Administrative Procedure Act," *Lewis*, 40 F. Supp. 3d at 151.

## B.  Factual Background[1]

Deville, now a pensioner, worked as a full-time employee of Exide Holdings, Inc. ("Exide") for over twenty-eight years at their recycling facility in Vernon, California (the "Vernon Facility").  Admin. Record (AR) at 2–3, Dkt. 81.  He became a member of the Exide Technologies Retirement Plan (the "Exide Plan" or "Plan") on June 2, 1987.  *Id.* at 2.

---

[1] Because the parties could not agree on the contents of the Joint Appendix required by Local Rule 7(n)(1), *see* Dkt. 80, Deville and PBGC submitted separate administrative appendices, Dkts. 81, 84.  Although Deville's appendix contains materials that PBGC's does not, the appendices appear otherwise identical.

In what follows, for reasons given *infra*, the Court cites PBGC's appendix rather than Deville's. To the extent that the Court quotes or describes portions of the record that have been filed under seal, those portions are hereby deemed unsealed.

Exide initially laid Deville off on August 14, 2014.  *Id.*  The next year, in March 2015, it closed the Vernon Facility. AR 2, 10, 12.  Deville permanently separated from Exide on March 18, 2015.  AR 2, 12–18, 20.

Following his permanent layoff and the shutdown of the Vernon Facility, Deville applied for disability benefits with the Social Security Administration.  He alleged disabilities beginning on August 15, 2015 and presented evidence that his work at Exide, which exposed him to lead, gave him lead poisoning starting in the 1980s.  AR 24–30, 101–17, 147–66.  The Administration ultimately granted his claim for benefits.[2]  AR 30.  But it determined that Deville became disabled on June 1, 2016, not August 2015, with benefits to begin in November of that year.  AR 33.  It explained that Deville had been able to work in 2015 and early 2016, meaning that he did not face a disability within the meaning of the Social Security Act at those times.  AR 26–27.

Exide filed for bankruptcy in 2020, causing the Exide Plan to terminate as insolvent.  AR 1.  PBGC became the Plan's statutory trustee.  *Id.*  By letter dated June 3, 2021, PBGC informed Deville that it was now the trustee of the Exide Plan.  AR 2.  Shortly thereafter, Deville—who had not previously applied for pension benefits under the Plan—initiated correspondence with PBGC.  AR 3.  He asked it to provide him with benefit calculations.  *Id.*  PBGC provided a benefit estimate on August 24, 2021.  *Id.*

On September 23, 2021, Deville objected to PBGC's benefit calculation.  *Id.*  He requested, among other things, that his benefits be processed under the Plan's disability provisions.  *Id.*  PBGC determined that Deville did not meet the Exide Plan's requirements for disability benefits.  AR 1–9.

---

[2] Originally, the Social Security Administration declined Deville's application.  But the U.S. District Court for the Central District of California reversed that determination, and on remand the Administration awarded Deville benefits.  *See* AR 26, 202.

Deville appealed, and the Appeals Board affirmed.  In its view, the Plan granted disability benefits to persons who incurred their disabilities while active employees of Exide.  AR 7.  But according to the Social Security Administration, Deville incurred his disability on June 1, 2016, before his 2014 and 2015 layoff dates.  *Id.*  It followed that Deville was not entitled to disability benefits under the Plan.  *Id.*

Deville filed suit in federal district court, seeking relief against the Board under the Administrative Procedure Act (APA) and ERISA. Dkt. 1; *see* 29 U.S.C. § 1303(f)(1).  The matter is now before the Court for summary judgment.

## II.     LEGAL STANDARDS

Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby*, 477 U.S. 242, 247–48 (1986). A "material" fact is one that has the potential to affect the outcome of the litigation.  *See Liberty Lobby*, 477 U.S. at 248; *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006).  A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for a nonmoving party.  *Liberty Lobby*, 477 U.S. at 248; *Powell*, 433 F.3d at 895.

Under the APA and ERISA, the Court asks whether the Appeals Board's decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2); *see Lewis*, 40 F. Supp. 3d at 151. "In actions under the APA, summary judgment is the appropriate mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review." *Davis v. PBGC*, 864 F. Supp. 2d 148, 156 (D.D.C. 2012) (cleaned up).

The D.C. Circuit has not decided "the level of deference due" to the Appeals Board's interpretation of a pension plan as a trustee.  *See Davis*, 734 F.3d at 1167.  The Court need not decide that question either, as PBGC has not requested deference in this case and Deville's claims fail regardless of the standard of review.

## III.     SUMMARY JUDGMENT

The parties' cross-motions for summary judgment raise two questions: whether the Appeals Board misapplied the Exide Plan in denying Deville disability benefits and whether Deville is entitled to relief against PBGC for any other reason.  The Court will resolve both questions in favor of PBGC.

### A.      Disability Benefits Under the Exide Plan

The Exide Plan's disability provisions are not a model of clarity.  Article II of the Plan's "Universal Provisions," which apply to every plan participant, say that a participant is "Disabled" only if he "has been determined disabled by the Social Security Administration."  AR 6 (quoting AR 40).  Additional components of the Plan's "Vernon Smelter Component," applicable only to employees of the Vernon Facility, add the following:

> **2.2.     Disability** means a physical or mental disability expected to either result in death or be of long-continued duration, which renders a Participant unable to engage in any employment or occupation for renumeration or profit for which he is reasonably qualified by reason of his training, education and experience . . . . *To qualify as a Disability, the events causing the physical and mental disability and the manifestation of the physical and mental disability must be incurred while a Participant is an active employee.*
>
> **4.4     Disability Requirement.**
>
>     **(a)     Eligibility**. A Participant who is an Employee and . . . incurs a Disability, is eligible for a disability benefit under this Component . . . .
>
>     **(b)     Amount.** A Participant's monthly disability benefit will be equal to his monthly Accrued benefit . . . determined as of his date of termination due to Disability. . . .

(d)      **Determination of the Disability**. The existence of a Disability will be established by evidence satisfactory to the Benefits Committee, including proof of a disability under the Federal Social Security Act and a certificate of a medical doctor. . . . The Benefits Committee has the discretion to determine if Participant has incurred a Disability.

AR 7 (quoting AR 46–47) (emphasis added).  The Appeals Board found that Deville was not entitled to disability benefits under these provisions because he became "disabled after [he was] no longer actively employed with Exide." AR 8.  That finding was not arbitrary or capricious.

The Court starts with the text of the Plan.  The Plan's Vernon Smelter Component extends disability benefits to Vernon Facility employees who "incur[] a Disability," where "Disability" means "a physical or mental disability . . . which renders a Participant unable to engage in any employment or occupation . . . for which he is reasonably qualified." Vernon Smelter Component §§ 4.4(a), 2.2.  But "[t]o qualify as a Disability, the events causing the physical and mental disability and the manifestation of the physical and mental disability must be incurred while" the employee "is an active employee" of Exide.  *Id.* § 2.2.  In other words, as the Appeals Board explained, "the critical issue" under the Plan is whether an employee "incurred" his "disability" before or after he stopped working.  AR 7.

The Plan also clarifies that the Plan's administrators have "discretion to determine if [an employee] has incurred a Disability."  Vernon Smelter Component § 4.4(d).  It says that "[t]he existence of a Disability" must "be established by evidence satisfactory to" the Plan's administrators, "including proof of disability under the Federal Social Security Act." *Id.*  Section 2.20 of the Universal Provisions similarly provides that "[d]isabled means that the [employee] has been determined disabled by the Social Security Administration."  Put in plain(er) English, the Plan's administrators may rely on the Social Security Administration's disability determinations to decide whether an employee "has incurred a Disability"—meaning, incorporating Vernon

Smelter Component § 2.2's definition, (1) a physical or mental disability (2) which renders the employee unable to engage in any employment or occupation and (3) which manifested while the employee worked at Exide.

Given these principles, PBGC acted lawfully when it deemed Deville ineligible for disability benefits. Deville ceased to be an "active" Exide "employee" in either 2014, when he was laid off, or 2015, when his layoff became permanent. But the Social Security Administration deemed Deville disabled only as of June 1, 2016, as the Appeals Board correctly observed.[3] AR 7; *see* AR 208. And under § 4.4(d) of the Vernon Smelter Component, the PBGC retained "discretion" to rely on the Social Security Administration's determinations as "satisfactory . . . proof of disability." Connecting the dots, the Appeals Board's finding that Deville became disabled after his time at Exide ended and thus could not receive disability benefits under the Plan was consistent with the facts and the Plan's text. It was not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2).

Deville replies that he incurred his disability from the 1990s onwards, when his work with Exide gave him lead poisoning. But that position is inconsistent with the Social Security Administration's view and thus with § 4.4(b) of the Vernon Smelter Component, which allows the Plan's administrators to rely on the Administration in deciding whether an employee has "incurred a [qualifying] [d]isability." Further, and in any event, Deville's position fails on its own terms. Under § 2.2 of the Vernon Smelter Component, a disability must "render[] a[n employee] unable to engage in any employment or occupation for renumeration or profit." Deville was not "unable

---

[3] Under the Social Security Act, the Administration asked whether Deville was able "to engage in any substantial gainful activity" by reason of his disability. AR 202; *see* 42 U.S.C. § 423(d)(1). Any difference between "substantial gainful activity" and "any employment or occupation" is not material to this case.

to engage in any employment or occupation" between 1990 and 2014; he worked successfully for Exide during that time.[4]  *See* AR 2, 104.  In the words of § 2.2, although "the events causing [Deville's] . . . disability" occurred while Deville worked at Exide, "the manifestation of [his] . . . disability" did not happen until later.[5]

Section 4.4(b) of the Vernon Smelter Component confirms these points.  Under § 4.4(b), an employee's "monthly disability benefit" is equal to "his monthly [a]ccrued benefit . . . determined as of his date of termination due to [d]isability."  Deville, however, was terminated due to company-wide layoffs rather than disability.  AR 2.  As a result, if he is entitled to disability benefits, he is entitled to benefits of an amount that the Plan does not specify.  That implausible outcome suggests that Deville is not entitled to disability benefits after all.  *Cf. Mercer Mgmt. Consulting, Inc. v. Wilde*, 920 F. Supp. 219, 235 (D.D.C. 1996) ("A contract is construed as a whole, giving effect to all of the contract's provisions and avoiding a construction which would render one of those provisions meaningless.").

For these reasons, the Court concludes that PBGC lawfully determined that Deville was not entitled to disability benefits under the Plan.

---

[4] In passing, Deville contends that he was laid off because he "pass[ed] out at work."  Pl.'s Answer to Def.'s Cross-Mot. for Summ. J. at 1, Dkt. 76.  The PBGC did not recount the facts that way, AR 2–3, and its position was not arbitrary or capricious in view of evidence that Deville was laid off as part of company-wide layoffs, *see* AR 10–11.

[5] At times, Deville seems to read § 2.2 as imposing one requirement—that "the events causing" both his disability and the manifestation of his disability have occurred during his time at Exide. But that reading of § 2.2 renders the provision's second, manifestation-of-disability clause superfluous, since *every* event that causes a disability causes the disability to manifest.  The better view is that § 2.2 creates two separate requirements: (1) that the events causing Deville's disability happened while Deville worked at Exide and (2) that the disability itself, including an inability to work, manifested while Deville worked at Exide.

### B.      Other Matters

Deville also makes several other arguments that do not directly relate to PBGC's denial of his application for disability benefits.  None succeed.

Deville contends that PBGC underestimated the *non*-disability benefits to which he is entitled under the Plan.  *See, e.g.*, Pl.'s Mot. for Summ. J. at 13, 22, Dkt. 57.  But PBGC has not yet issued a final decision as to Deville's non-disability benefits.  *See* AR 8 ("[T]his Appeals Board decision relates only to your appeal regarding your entitlement to a PBGC-guaranteed disability retirement benefit.").  Without final agency action on PBGC's part, the Court cannot assess Deville's entitlement to non-disability benefits.  *See Soundboard Ass'n v. FTC*, 888 F.3d 1261, 1267 (D.C. Cir. 2018).

Deville further alleges that Exide's plan administrator violated its obligations under ERISA when it failed to provide notice of the Plan's termination at least 60 days before its proposed termination date.  *See, e.g.*, Pl.'s Mot. for Summ. J. at 3.  But it is not clear how this failure "adversely affected" Deville or why it can be traced to an action of PBGC, meaning the Court cannot consider it either.  *See* 29 U.S.C. § 1303(f)(1) (allowing lawsuits against PBGC by persons who are "adversely affected by any action of the corporation with respect to a plan"); *Lujan v. Def. of Wildlife*, 504 U.S. 555, 560–61 (1992) (explaining that Article III standing requires an injury traceable to a defendant's challenged activity).

In a similar vein, Deville's complaint asks this Court to issue a "judgment enforcing the rights of [*sic*] plaintiff under ERISA and the terms of the Plan"; "judgment declaring the right and obligation of the parties"; "judgment enjoining the PBGC from any act or practice that violates ERISA or the terms of the plan"; "judgment setting aside all PBGC regulations applied in this circumstance that violate ERISA"; "[a]n accounting of all premiums paid to the PBGC by Exide

Technologies Plan in connection with the plan in 1986"; "[t]he creation of a constructive trust over all premiums in PBGC's possession"; "an award of monetary relief against the PBGC as a trust"; and "other equitable relief."  Compl. ¶ H, Dkt. 1.  Because Deville has not identified how this relief would redress injuries he has suffered that are traceable to PBGC, the Court concludes that he lacks standing to seek it.  *Lujan*, 504 U.S. at 560–61.

Finally, Deville contends that PBGC did not review all the medical documentation he submitted in support of his claim for benefits.  He urges the Court to consider "the entire record" in this case, Pl.'s Mot. for Leave to File Document Under Seal at 2, Dkt. 85, and suggests that PBGC's failure to do so amounted to legal error, *see* Pl.'s Mot. for Summ. J. at 15.  Having reviewed the entire record, however, the Court concludes that none of Deville's additional documentation is relevant to his case.  As a result, even assuming that PBGC failed to consider Deville's documents, any error that resulted would be harmless.  5 U.S.C. § 706; *see Zevallos v. Obama*, 793 F.3d 106, 115 (D.C. Cir. 2015).

For these reasons, the Court will deny Deville's motion for summary judgment and grant PBGC's motion for summary judgment.

## IV.    REMAINING MOTIONS

Finally, Deville moves for the Court to "allow the complete administrative re[c]ord" to be filed under seal and has tendered the full record for the Court's review.  Dkt. 85; *see* Dkt. 84.  He also suggests that he may wish to file subsets of the administrative record under seal, *see* Dkt. 83, although he has not yet done so or identified the particular subsets of the record that he deems relevant to this action.

The Court will deny Deville's motion.  Under this Court's local rules, in cases involving judicial review of agency actions, litigants may not file "excess material from the administrative

record that does not relate to the issues" in a case.  LCvR 7(n)(1).  Having reviewed the full administrative record provided by Deville, Dkt. 84, the Court determines that any additional component of the record that Deville seeks to submit would be excess and irrelevant.  Accordingly, the Court will deny Deville leave to file the whole administrative record under seal and confirms that the portions of the record not provided in PBGC's appendix have been excluded consistent with this District's Local Rules.

## CONCLUSION

For the foregoing reasons, the Court denies Deville's Motion for Summary Judgment, grants PBGC's Motion for Summary Judgment, and denies Deville's remaining motions. A separate order consistent with this decision accompanies this memorandum opinion.

DABNEY L. FRIEDRICH

December 6, 2023                                           United States District Judge

11